UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                                   PLAINTIFF

v.                                                                                                                         NO. 3:13-CR-00132-S

RICHARD MOSES HERNANDEZ, et al                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a motion of Defendant, Richard Moses Hernandez, for an order in limine to preclude "any evidence, including testimony, of his possession of a handgun at the time of his arrest." DN-83. Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the Court finds Defendant's arguments without merit. For the reasons set forth below, the Court will deny Defendants motion in limine.

**I.**

This case ends and begins with a Federal Bureau of Investigation ("FBI") investigation into the alleged methamphetamine trafficking organization of Sergio Alaniz ("Alaniz"), a co-defendant in the current action. The investigation ultimately led the FBI to a Red Roof Inn in Louisville, Kentucky, where they believed a methamphetamine transaction involving Defendant, Richard Moses Hernandez, had occurred. There, several agents encountered Defendant and, at some point during their interaction, seized from him handgun that was on his person. This motion revolves around the admissibility of that handgun in the current action and the following facts.

At some point in its investigation of Alaniz's alleged methamphetamine trafficking organization, the FBI obtained authorization to wiretap his phone conversations. This wiretap first revealed general discussions about the acquisition and distribution of methamphetamine. It also revealed that a methamphetamine transaction was expected to occur on September 10, 2013. Agents acted on this information and were able to intercept a co-defendant named Apolinar Bernal-Esquivel ("Bernal-Equivel") after he had met with Alaniz at a Red Roof Inn at 4704 Preston Highway, Louisville, Kentucky that day. Bernal-Equivel was found to be in possession of 670 grams of methamphetamine.

Then FBI agents used the same wiretap and learned that Alaniz was expecting *another* shipment of methamphetamine. This shipment was to be delivered on September 24, 2013 by a courier whom Alaniz referred to as "Richard" or "Big Rich." The wiretap also divulged that the shipment would be coming from Texas. So on September 24, agents surveilled the same Red Roof Inn and learned from management that room 216 was rented by Francisco Garcia ("Garcia"), a man the agents established as a one of Alaniz's known narcotics associates. They also observed a vehicle with Texas license plates parked near rooms 216 and 218. And consequently, given the totality of the information they had gathered, agents approached room 216 investigate further.

Four agents knocked on room 216 with badges around their necks and guns holstered. There was no immediate response. Then Defendant emerged from the room next door, 218, and began smoking a cigarette. It is undisputed that Defendant paused momentarily upon seeing the agents. Next, based on what one agent perceived a suspicious reaction to the agents' presence, that agent approached Defendant and asked him what his name was. The Government contends that Defendant responded by introducing himself as "Richard, Big Rich"; however, Defendant

contends that he simply said "Richard," but now admits that he does go by "Big Hurt." DN 77. Further conversation revealed the Texas vehicle was his.

It is undisputed that, at some point during their interaction, Defendant volunteered that he was carrying a handgun in his pants pocket, and that the agents seized this handgun. A subsequent search of Defendant's room pursuant to a search warrant revealed another handgun and $9,000.00 in cash. Agents eventually recovered an amount of methamphetamine from Alaniz and Garcia the agents allege was delivered by Defendant.

Based on the foregoing, Defendant was indicted on two charges: conspiracy to knowingly and intentionally possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 812, and knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). DN 17. He moves the Court for an order in limine to exclude "any evidence, including testimony, of his possession of a handgun at the time of his arrest" on the grounds that such evidence is irrelevant under Fed. R. Evid. 401 or, in the alternative, unduly prejudicial under Fed. R. Evid. 403. We will address the merits of these arguments separately and in turn.

  A. Relevancy

Fed. R. Evid 401 "sets a low threshold for relevancy." Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "th[at] fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). The Government has met this burden in seeking to admit evidence that Defendant possessed a firearm at the time of his arrest.

To begin, the Defendant curiously argues the firearm at issue can only relevant if it was possessed *in furtherance of* the alleged drug crimes. He pulls this language from 18 U.S.C. §

924(c), a statute that, quite literally, prohibits the "use[] or carr[ying] of a firearm . . . in furtherance" a "drug trafficking crime." But in light of the facts that Defendant is not charged with a violation of 18 U.S.C. § 924(c), and that Defendant has cited no authority applying this standard in conjunction with the criminal violations actually at issue, let alone Fed. R. Evid. 401, we decline to adopt this novel standard. Besides, even assuming Defendant had been charged with a violation of 18 U.S.C. § 924(c), he would face an uphill battle convincing us that his possession of a firearm during, near, or in connection with his alleged involvement in a drug transaction would not make his commission of *that crime* more probable – we would be more apt to subscribe to the notion that "[i]t is basically immaterial to the admissibility inquiry in cases like these whether the accused has been charged with an offense directly related to his or her possession of a 'tool of the trade.'" *United States v. Martinez*, 938 F.2d 1078, 108 (10th Cir. 1991).

More to the point, the Government correctly asserts that the Defendant's firearm possession is relevant if it "has any tendency to make" his commission of the alleged crimes "more . . . probable." To that end, it points to several decisions recognizing that firearms are relevant in narcotics-trafficking cases because they are as paramount a part of the trafficking as the scales, glassine bags, and other narcotics equipment used to consummate it. *United States v. Marino*, 658 F.2d 1120, 1123 (6th Cir. 1981); *see United States v. Hatfield*, 815 F.2d 1068, 1072 (6th Cir. 1987); *United States v. Korman*, 614 F.2d 541, 556 (6th Cir. 1980); *United States v.Pentado*, 463 F.2d 355 (5th Cir. 1972). These decisions reflect a judicial cognizance, gathered through years of "[e]xperience on the trial and appellate benches," that "substantial dealers in narcotics keep firearms on their premises as tools of the trade." *Marino*, 658 F.2d at 1123 (quoting *United States v. Wiener*, 534 F.2d 15, 18 (2d. Cir.) *cert denied* 446 U.S. 952, 100 S.Ct.

2918, 64 L.Ed. 2d 808 (1980)). Thus it remains, no less then than now, that one's possession of a firearm "tend[s] to prove [his] intent to promote and protect [a] narcotics conspiracy." *Marino*, 658 F.2d at 1123. So here, where the Defendant is alleged to have transported a substantial amount of methamphetamine from Texas to Kentucky, been at the anticipated location of the drug transaction on its anticipated date, identified himself as "Richard" or "Big Rich" (a man his co-defendant had unwittingly revealed as the anticipated courier), and possessed $9,000.00 in cash at the location, the Court finds no reasons to depart from the judicial acumen finding firearm possession relevant in a cases such as this.

And lest there be any doubt, that Defendant disputes having identified himself to the agents as "Richard, Big Rich" does not affect the Court's analysis. Insofar as our relevancy determination is conditioned upon this disputed fact,[1] a notion we doubt, there is sufficient evidence of it for a jury to reasonably conclude that he did, in fact, introduce himself as "Richard, Big Rich." DN 77, pp. 9, 17. This satisfies the mandates of Fed. R. Evid. 104(b) and Fed. R. Evid. 401. *See Huddleston v. United States*, 485 U.S. 681, 690, 108 S. Ct. 1496, 1501, 99 L. Ed. 2d 771 (1988) (explaining that, under Rule 104(b), a court must decide whether the jury could reasonably find the conditional fact by a preponderance of the evidence); Fed. R. Evid. 104 cmt. (b) (same). Therefore, Defendant's possession of a firearm is relevant to both charges – conspiracy to possess with intent to distribute methamphetamine and knowingly and intentionally possessing with intent to distribute 50 Grams or more of methamphetamine – and his motion is denied to that extent.

---

[1] The Court notes that even were we to accept the Defendant's allegation that he introduced himself simply as "Richard" as true, our analysis would remain unchanged. The Defendant's name is Richard and it is undisputed that he is a large man at 5'9" and 270 lbs. – in other words, agents could have perceived "Big Rich" as a descriptive nickname for a big guy named "Richard" while they questioned Defendant. This is bolstered by the fact that he admitted that his friends call him "Big Hurt," DN 77, p. 58, and that the wiretap also referred to the courier as "Richard." Thus, it is entirely reasonable to believe that the agents would still have believed, "This is our guy," had Defendant only introduced himself as "Richard." *See* DN 77, p. 8.

### B. Undue Prejudice

Defendant also argues that evidence of his handgun possession is inadmissible under Fed. R. Evid. 403. He correctly states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" under this rule, Fed. R. Evid. 403, and recognizes that "unfair prejudice" means an "undue tendency to suggest decision based on improper consideration" or "inflame the passions of the jury." *United States v. Thomas*, 49 F.3d 253, 259 (6th Cir. 1995); *Doe v. Clairbourne Cty.*, 103 F.3d 495, 515 (6th Cir. 1993). Armed with this language, he argues that Defendant's possession of a firearm will cause the jury to associate him with the Mexican drug cartel, violence, and guilt because his last name is "Hernandez," he is from Texas, and he is alleged to have been involved in a narcotics transaction. Without opining one way or the other to the likelihood of such a connection, we find Defendant's argument unavailing under Fed. R. Evid. 403.

Though creative in his attempts to paint this evidence as inordinately prejudicial, Defendant disregards that "[v]irtually all evidence is prejudicial." *Old Chief v. United States*, 519 U.S. 172, 193, 117 S. Ct. 644, 656, 136 L. Ed. 2d 574 (1997) (quoting *Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 618 (C.A.5 1977)). But it is only on a finding that this prejudice *substantially outweighs* the evidence's probative value that Fed. R. Evid. 403 instructs courts that they *may* exclude it. And thus, although one may hesitate to reject the idea that the firearm in question could cause an observer to associate Defendant with organized drug activity, we find that any such prejudice does not outweigh the firearm's probative value. On one hand, our in-depth discussion of the firearm's relevance above leaves nothing but paltry arguments against its probative value. And on the other, the firearm, by itself, does not appear *that* prejudicial. Put another way, we find that it is the totality of the Defendant's actions – namely: 1. residing in a

room next door to the scene of an alleged drug transaction, 2. behaving suspiciously when he exited his room, 3. identifying himself, in the best case scenario, as "Richard" when officers expected that the drug courier was named "Richard" a.k.a. "Big Rich," 4. carrying $9,000 in cash, and 5. admitting haven driven up from Texas, the expected origin of the delivered drugs – that would cause one to associate him with an unsavory organization, not his possession of a firearm.

We reject Defendant's Fed. R. Evid. 403 arguments for these reasons. Therefore, we find that his motion in limine is without merit.

### III.

Motion having been made and for the reasons set forth herein above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that:

1. The motion of Defendant, Richard Moses Hernandez, for an order in limine to exclude evidence of his handgun possession at the time of arrest is **DENIED.**

November 19, 2014

Charles R. Simpson III, Senior Judge
United States District Court